TODD KIM
Assistant Attorney General
CODY MCBRIDE
Trial Attorney, CA Bar No. 298099
cody.mcbride@usdoj.gov
United States Department of Justice
Environment & Natural Resources Division
Indian Resources Section
P.O. Box 7611
Ben Franklin Station
Washington, D.C. 20044-7611
TEL: (202) 514-6755
FAX: (202) 353-1156

*Attorney for the United States*

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| | ) Case No. 5:24-cv-554 |
| v. | ) |
| | ) |
| RICHARD RIZZOTTO and | ) |
| LINDA RIZZOTTO, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## COMPLAINT

The United States of America, by authority of the Attorney General of the United States and at the request of the United States Department of the Interior, acting on its own behalf and as trustee for the Colorado River Indian Tribes ("Tribes" or "CRIT"), files this complaint and alleges as follows:

**NATURE OF ACTION**

1. This is a civil action brought pursuant to the federal common law of trespass and ejectment to remedy Richard and Linda Rizzotto's ("Rizzottos" or "Defendants") intentional and unauthorized occupancy and use of lands that the United States owns in trust for the benefit of the Tribes and that are subject to federal authority, supervision, and restrictions against alienation.

2. Defendants have repeatedly been notified regarding this trespass and have been ordered to cease and desist from it. Defendants continue to occupy and use the subject trust lands, described in paragraph 7, without right, title, or interest, even after such notifications and orders. Defendants have also unlawfully deprived the Tribes of their right to occupy and use that land.

3. The United States seeks all just and proper remedies against Defendants, including, but not limited to, the following: declaratory relief; damages or mesne profits for the unlawful occupancy and use of the property, and for restoration and remediation of the damaged and degraded property; ejectment; and all costs and fees associated with this action.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction over the subject matter of and parties to this action pursuant to 28 U.S.C. §§ 1331, 1345.

5. Venue properly lies in this District, pursuant to 28 U.S.C. § 1391(b), because the subject property, described in paragraph 7, is in the District and all the alleged acts occurred in the District.

**PARTIES**

6. Plaintiff is the United States of America suing on its own behalf and in its capacity as trustee for the Tribes.

7. Defendants have unlawfully occupied and continue to unlawfully occupy Lot No. 9 of the Rymer Subdivision ("Rymer Lot No. 9"), which is situated in a portion of the San Bernardino Base and Meridian, Township 4 South, Range 23 East, Section

23, and consists of approximately 0.47 acres, with 124 feet of river frontage (the "Subject Property").

## GENERAL ALLEGATIONS

**A.    The Lands at Issue**

8.    CRIT is a federally recognized Indian tribe residing on the Colorado River Indian Reservation ("Reservation"), which Congress established in 1865. Act of March 3, 1865, 13 Stat. 541, 559. The Reservation straddles the Colorado River ("River")—which serves as the Arizona-California border—with land in both Arizona and California. Originally, the entire Reservation was located to the east, or Arizona side, of the River. The Reservation was subsequently expanded by Executive Orders dated November 22, 1873; November 16, 1874; May 15, 1876; and November 22, 1915.

9.    In 1964, Congress affirmed the CRIT Reservation as established and expanded by Executive Order, providing that "unallotted lands of the . . . Reservation . . . are . . . tribal property held in trust by the United States for the use and benefit of [CRIT]." Pub. L. No. 88-302, 78 Stat. 188, 188 (April 30, 1964) ("1964 Act"). The 1964 Act authorized the Secretary to approve leases of lands on the Reservation, but it initially held in abeyance the Secretary's leasing authority on lands on the California side of the River until such time that those lands were "determined to be within the reservation." Pub. L. No. 88-302, § 5.

10.    On January 17, 1969, the Interior Solicitor Edward Weinberg issued a legal opinion in which he determined that the western boundary of the Reservation included a portion of Riverside County, California. Edward Weinberg, U.S. Dep't of the Interior, Opinion Letter on Western Boundary of the Colorado River Indian Reservation (Jan. 17, 1969), *as reprinted in* Opinions of the Solicitor of the Department of the Interior Relating to Indian Affairs 1917-1974 at Vol. II 2096, https://thorpe.law.ou.edu/sol_opinions/p2076-2100.htm. The Secretary of the Interior, Stewart Udall, concurred in the opinion and instructed the Director of the Bureau of Land Management to conduct the appropriate surveys to fix the line of the western

boundary of the Reservation. Exhibit 1, Memorandum from the Secretary of the Interior to BLM Director (January 17, 1969) ("1969 Secretarial Order").

11. In 1970, the Secretary of the Interior, Walter Hickel, confirmed Secretary Udall's "final, official, and unqualified declaration that the 'Benson Line' was the proper location of the western boundary of the Reservation." Exhibit 2, Letter from the Secretary of the Interior to CRIT Chairman (June 2, 1970).

12. The Bureau of Indian Affairs ("BIA") then published a notice in the Federal Register that extended the Colorado River Reservation Indian leasing program to "those lands which the Secretary of the Interior has determined, pursuant to the Act of April 30, 1964 (78 Stat. 188), to be within the Colorado River Reservation." Certain California Lands Determined to Be Within the Colorado River Reservation, 35 Fed. Reg. 18,051 (Nov. 25, 1970).

13. The Subject Property is within the exterior boundaries of the lands determined to be within the Reservation as noticed in the Federal Register on November 25, 1970.

**B.    Defendants' Unauthorized Occupation and Use of the Subject Property**

14. After the November 25, 1970, Federal Register notice, the BIA began approving permits to occupy the Reservation lands located west of the Colorado River, including the permit for the Subject Property.

15. CRIT utilized standard-form permits that were approved by the *Resources Development Committee* (RDC), a subcommittee of CRIT's Tribal Council. Each permit was captioned with "Permit No. WB-[XXX] (R) Western Boundary Permit," with "Permit (Homesite)" written below. The date of the RDC's revision is noted in the upper lefthand corner of the permits. Permits with the same revision date take the same form and, apart from identifying information, are identical.

16. Permits with the notation "Revised and Approved RDC 8/21/79" have thirteen numbered pages of text. Pages 1 through 3 include the permittee-specific information. The Articles included therein identify the parties, describe the premises,

state the terms of the permit, and list the rental amounts to be paid. Pages 4 through 12 are identical across all permits, articulating the parameters of the permit. Page 13 contains the signature and execution block. Permits identify CRIT as the permitter and includes signature lines for the Permittee, the Tribal Chair, Tribal Secretary, and the BIA Superintendent.

17. Once a permit was executed, it was delivered to BIA's Land, Titles, and Records Office for recordation. A recorded permit contained a nine-digit record number beginning with 603. That number was stamped in black ink and placed in the lower righthand corner of each page. Once the BIA received a permit, it stamped the first and last page with ink, noting the permit was received and identifying the date, time, and location of the receiving BIA office.

18. On September 20, 1979, CRIT issued Permit No. WB-63(R) to Defendants, which the BIA approved on February 7, 1980. Exhibit 3, Permit No. WB-63(R) ("Permit") at 1, 13.

19. The Permit states the Subject Property is within the Reservation and authorized the "use and occupancy by the Permittee . . . and their immediate family only, for single family residential occupancy." *Id.* at 2.

20. Article 4 of the Permit states the Permit "may be terminated at the end of the initial [one-year] term or at the end of any such successive one-year period by written notice served by the Secretary or the Permittee at least ninety (90) days in advance thereof." *Id.*

21. Article 5 of the Permit states "[t]he Permittee . . . covenants and agrees to pay . . . the amount herein set out . . . or as may be adjusted from time to time," and that "if any installment or rental is not paid on or before the due date, interest at the rate of 12% per annum shall become due and payable and will run until said rental is paid." *Id.* at 2–3.

4

22. Article 6 of the Permit prohibits the Permittee from placing "permanent improvements" on the Subject Property without first obtaining written consent from CRIT. *Id.* at 3.

23. Article 15 of the Permit states that "Permittee understands and agrees that this permit shall not be deemed to confer upon Permittee any equity right, title or interest to or in the permitted lands, and further, Permittee hereby relinquishes all past, present or future claims of right, title or interest in, the lands held under this permit or any other lands within the Colorado River Indian Reservation . . . ." *Id.* at 9.

24. Article 18 of the Permit states:
> should Permittee default in the payment of any installment or rent or any other sum when due . . . the Secretary . . . may declare this permit forfeited by giving Permittee written notice thereof, and upon such forfeiture, Permittee shall have no further rights or interest hereunder or in or to the permitted premises or any part thereof, and Permitter may re-enter and take possession of the permitted premises and all buildings and improvements thereon, and may cast . . . Permittee and all persons claiming under the permit from the premises.

*Id.* at 10.

25. Article 22 of the Permit states that "[h]olding over by the Permittee after the termination of this permit shall not constitute a renewal or extension hereof or give the Permittee any rights hereunder or in or to the Permitted premises." *Id.* at 11.

26. Article 25 of the Permit states the Permit "and the covenants, conditions, and restrictions hereof shall extend to and be binding upon the successors, heirs, assigns, executors, and administrators of the parties hereto." *Id.* at 12.

27. Article 27 of the Permit states, "[s]ubletting or assignment of this permit may be made only with the written consent of all the parties hereto." *Id.*

28. Rent under the permit was originally $580.32 per year but was increased to $663.60 per year in 1977, to $1,547.52 per year in 1983, to $2,579.20 per year in 1986, and to $5,580 per year in 1992. Exhibit 4, Payment Record.

29. Defendants paid their rent every year until 1995. *Id.* At that time, Defendants stopped making any payments under the Permit, yet they continued to occupy the Subject Property. *See* Exhibit 5, Letter from CRIT Realty Services to Defendants (Aug. 19, 2000).

30. On August 19, 2000, CRIT notified Defendants that their failure to pay rent from 1995 to 2000 violated the Permit and they owed $30,480.00, consisting of back rent and interest. *Id*. CRIT told Defendants that they had 10 days from receipt to show cause why the Permit should not be cancelled or else the Permit would be immediately terminated. *Id*. Defendants did not pay back rent, did not show cause why the Permit should remain, and did not vacate the Subject Property. *See* Exhibit 6, Letter from BIA to Defendants (May 31, 2016).

31. On April 9, 2013, the CRIT Office of the Attorney General notified Defendants that they were in trespass by occupying the Subject Property without a valid Permit. Exhibit 7, Letter from CRIT Office of the Attorney General (April 9, 2013). Defendants were also informed that CRIT would offer "generous solutions to resolve on-going trespass issues" but would "continue to pursue all available legal remedies" against continuing trespassers that did not cooperate. *Id.* Defendants declined to remedy their trespass and instead remained on the Subject Property without authorization. *See* Exhibit 6, Letter from BIA to Defendants (May 31, 2016).

32. In 2016, the BIA declared Defendants to be in trespass because the Permit had been terminated for failure to pay rent. *Id*. Defendants were given 30 days to vacate the Subject Property, as well as remove personal property, or to appeal the BIA's finding of trespass. *Id*. However, Defendants did not vacate the Subject Property.

33. The West Bank Homeowners' Association, on behalf of individual trespassers (including Defendants), appealed the BIA's decision to the Interior Board of Indian Appeals ("IBIA").[1] *See West Bank Homeowners Ass'n v. Acting W. Reg'l Dir.,*

---

[1] The IBIA is an administrative appellate body within the United States Department of the Interior. *See* https://www.doi.gov/oha/organization/ibia.

*Bureau of Indian Affs.*, 64 IBIA 82, 2017 WL 1192190 (IBIA Mar. 24, 2017). IBIA received notice of the appeal on September 12, 2016, nearly two months after the filing deadline of June 30, 2016, and dismissed the appeal as untimely. *Id.* at *1.

34. Upon information and belief, Defendants continue to illegally use and occupy the Subject Property.

35. Defendants' unlawful occupation and use of the Subject Property has been and continues to be knowing, intentional, willful, and contrary to federal law, and it has deprived the Tribes and Plaintiff of the occupancy and use they are entitled to on said property.

### C. Legal Basis for Claims against Defendants

36. The federal common law of trespass "generally comports with the Restatement of Torts," *United States v. Milner*, 583 F.3d 1174, 1182 (9th Cir. 2009), under which trespass is defined as "the intentional use of the property of another without authorization and without privilege," *United States v. Imperial Irr. Dist.*, 799 F. Supp. 1052, 1059 (S.D. Cal. 1992). Further, "[t]he intent required is simply an intent to be on the land." *Id*.

37. Under federal common law, remedies for trespass include declaratory relief, damages, and ejectment. *See United States v. Pend Oreille Pub. Util. Dist. No. 1*, 28 F.3d 1544, 1549 n.8 (9th Cir. 1994); *United States v. Torlaw Realty, Inc.*, 483 F. Supp. 2d 967, 973 (C.D. Cal. 2007), *aff'd*, 348 Fed. Appx. 213 (9th Cir. 2009). As stated by the United States Supreme Court, "that an action of ejectment could be maintained on an Indian right to occupancy and use, is not open to question." *Marsh v. Brooks*, 49 U.S. 223, 232 (1850).

38. Moreover, residential leases on Indian land are governed, generally, by 25 C.F.R. Part 162. The Permit is a residential lease and is governed by these regulations.

39. BIA's leasing regulations define a trespass as "any unauthorized occupancy, use of, or action on any Indian land or Government land." 25 C.F.R. § 162.003.

40. Defendants are required to have a lease to occupy and use the tribal trust properties on the Reservation. 25 C.F.R. § 162.005.

41. When a lessee remains in possession after a residential lease is terminated, BIA may treat the unauthorized possession as a trespass and take action to recover possession and pursue any additional remedies under applicable law. 25 C.F.R. § 162.371.

42. Defendants currently have no right, title, or interest in the Subject Property. Although Defendants recognized the Subject Property's trust status by leasing it from CRIT and paying rent accordingly, they do not now possess a valid lease or permit for the Subject Property. Therefore, Defendants' occupancy and use of the Subject Property constitutes trespass under federal common law and governing regulations.

## FIRST CAUSE OF ACTION

### (Trespass)

43. The United States realleges each of the preceding paragraphs as if fully set forth herein.

44. Defendants do not have and have never had an ownership interest in the Subject Property.

45. Since at least August 2000, Defendants have willfully occupied and used the Subject Property without authorization or legal right. Defendants were notified on August 14, 2000, that the Permit would be cancelled within 10 days of receipt unless Defendants showed cause why the Permit should remain in place. Defendants failed to respond. Defendants were then notified of their trespass by notices and letters dated April 9, 2013 and May 31, 2016. Defendants were again offered the opportunity to contact the CRIT Attorney General's Office to resolve their trespass. Despite not having a valid permit and being offered the opportunity to enter into a new lease with CRIT, Defendants have not done so nor have they vacated the Subject Property.

46. As a result of Defendants' unauthorized and unlawful occupation and use of the Subject Property, they have committed and are now committing a continuing willful trespass on CRIT land that is subject to federal supervision, authority, and restrictions against alienation.

47. As a direct and proximate result of Defendants' continuing and willful trespass, they have damaged and continue to damage the Tribes' trust property and the governmental interests of the United States.

## SECOND CAUSE OF ACTION

### (Ejectment)

48. The United States realleges each of the preceding paragraphs as if fully set forth herein.

49. Defendants do not have and have never had an ownership interest in the Subject Property.

50. Since at least August 2000, Defendants have willfully occupied and used the Subject Property without authorization or legal right. Despite not having a valid permit and being offered the opportunity to enter into a new lease with CRIT, Defendants have not done so or vacated the Subject Property.

51. As a result of Defendants' unauthorized and unlawful occupation and use of the Subject Property, they have unlawfully prevented and continue to prevent CRIT from occupying and using its land, which is subject to federal supervision, authority, and restrictions against alienation.

52. Defendants have defied and continue to defy the authority of the United States, acting through the BIA, to administer the Subject Property. Defendants have refused to comply with the BIA's requests that they cease and desist from their unlawful occupation and use of the Subject Property and remove all facilities and equipment from the Subject Property.

53. Defendants' continuing occupation and use of the Subject Property is unlawful and, as a direct and proximate result of that trespass, they have damaged and

continue to damage the Tribe's and United States' property interests, and they will continue to do so unless and until they vacate the Subject Property or are ejected, and their facilities and equipment are removed from the Subject Property.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, the United States of America, respectfully requests that the Court provide the following relief:

a. Declare pursuant to 28 U.S.C. §§ 2201, 2202 that Defendants' willful, unauthorized, and continuing occupation and use of the Subject Property, without the authorization of the Tribes and United States, constitutes a continuing trespass;

b. Enter a judgment for mesne profits or monetary damages caused by Defendants' willful, unauthorized, and continuing occupancy, use, and disturbance of the Subject Property accruing over the last six years and 90 days preceding the date of filing of this Complaint, including, without limitation, the fair rental value of the property, administrative costs, and the costs and expenses of restoring and remediating the damaged and degraded property;

c. Enter a judgment for pre- and post-judgment interest on all damages awarded from the date of filing of this Complaint until the Judgment is paid in full;

d. Eject Defendants from the Subject Property;

e. Order Defendants to remove from the Subject Property any and all equipment, personal property, buildings, and other materials placed thereon by them, and abate any damage caused to the Subject Property necessary to restore the property to its natural condition, or, in the alternative, authorize the United States to undertake these tasks, with all costs and expenses incurred by the United States to be paid by Defendants;

f. Award the United States all costs of suit to the maximum extent permissible; and

g. Grant such other and further relief as the Court deems just and proper.

DATED:  March 15, 2024

                                    Respectfully submitted,

                                    TODD KIM
                                    Assistant Attorney General

                                    */s/ Cody McBride*
                                    CODY MCBRIDE
                                    Trial Attorney, CA Bar No. 298099
                                    cody.mcbride@usdoj.gov

OF COUNSEL:                       United States Department of Justice
Michael Bianco                     Environment & Natural Resources Division Shani
Shani N. Sumter                  Indian Resources Section
Karen F. Boyd                       P.O. Box 7611
Victoria A. Cejas                  Ben Franklin Station
U.S. Department of the Interior    Washington, D.C. 20044-7611
Office of the Solicitor              TEL:  (202) 514-6755
Indian Trust Litigation Office     FAX: (202) 353-1156

                                    *Attorney for the United States*